UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

                        Case No. 17-20489

v.                       Honorable Terrence G. Berg

D-14 Jasmyn Romo,

        Defendant.

### **Government's Sentencing Memorandum**

Defendant Jasmyn Romo transported drugs for Tyler Jackson. She was caught, along with Ocean Francis, with more than four kilograms of fentanyl and heroin. Romo would be subject to a mandatory minimum sentence of 120-months in prison, but Section 402 of the First Step Act amended the criteria for Safety Valve eligibility. Therefore, a downward variance is appropriate. Romo's guidelines should be 46-57 months. A sentence of 24 months imprisonment is sufficient but not greater than necessary to reflect the seriousness of the offense, deter Romo and others from trafficking drugs, and will avoid any unwarranted sentencing disparity.

**Facts**

Since approximately 2015, Maurice McCoy's organization distributed drugs to multiple cities throughout the United States, including in the Eastern District of Michigan. McCoy's organization established stash locations in Novi, Michigan and Baltimore, Maryland, the most active hubs. (PSR ¶ 21). Couriers for the organization typically traveled from California to Las Vegas and then via Greyhound bus or Amtrak to various distribution cities. (*Id*.) Couriers traveled with or for those close to McCoy. One of those individuals was Tyler Jackson, McCoy's friend, and former co-defendant on a prior drug conspiracy. (*Id*. ¶ 23). Romo and co-defendant Ocean Francis both traveled for Jackson, but Francis was more trusted than Romo. (*Id*. ¶ 24). Romo and Francis exchanged messages about "going OT for Pootie," meaning transporting drugs for Jackson. (*Id*. ¶ 25).

In March 2019, Romo, Francis, and Jackson left California for the Las Vegas bus station, at some point switched from the bus to an Amtrak train, and before reaching Chicago ultimately boarded a commuter van to avoid the possibility of being stopped by law enforcement. (*Id*. ¶ 24). But agents were tracking Jackson's cell phone as they traveled and located the commuter van, which they had local law enforcement stop. (*Id*.). Romo and Francis were carrying the drugs in their backpacks, as much as four kilograms of fentanyl and heroin

between them. (*Id*.). They intended to split up to deliver the drugs to McCoy's customers, but were thwarted by DEA.

### Sentencing Factors

The following factors must be considered by the Court in arriving at an appropriate sentence:

### 3553(a)(1): the nature and circumstances of the offense

Romo was caught traveling across the United States transporting multiple kilograms of narcotics. She admitted her involvement in the conspiracy was not a single, isolated event, acknowledging she transported drugs to Michigan on one prior occasion. Her offense, particularly the transportation of such lethal drugs like fentanyl and heroin to be distributed, was serious.

### 3553(a)(1): the history and characteristics of the defendant

Romo had a difficult childhood. Her parents weren't present because they abused drugs and were periodically incarcerated. (PSR ¶ 70). As a result, Romo was primarily raised by her grandmothers. (*Id*. ¶ 71). But once she was a teenager, Romo would not listen, ran away, and became pregnant. (*Id*.). She was no longer allowed in her paternal grandmother's home and ended up in foster homes until she aged out of foster care. (*Id*.). As a teenager, Romo attempted suicide twice, once

while living with her paternal grandmother and then two years later while in foster care. (*Id*. ¶ 81).

Now that Romo is in her late 20s she maintains a better relationship with her paternal grandmother, who she resides with, along with her two children, who are 12 and 2 years old. (*Id*. ¶¶ 73-75, 88). She also denies any suicidal thoughts or attempts. (*Id*. ¶ 81).

Seven years ago, Romo was involved in a car accident and suffered serious injuries. She became addicted to pain medication and still struggles with substance abuse issues. (*Id*. ¶¶ 79, 88-90). Even before her accident, Romo was prone to substance abuse, trying alcohol and marijuana as young at 11 years old, and cocaine when she was 18 years old. (*Id*. ¶¶ 84-86). But Romo's ongoing problems with opioids began when her pain prescriptions from her accident expired. She then started using whatever pills she could get, including Percocet, Norco, and Oxycodone, and even trying heroin. (*Id*. ¶ 88). In an effort to treat her opioid addiction she has been prescribed Suboxone and Methadone daily. (*Id*. ¶ 89). But Romo has failed to attend counseling sessions and has tested positive for drugs as many as eight times while on pretrial supervision[1].  On July 7, 2022, she tested

---

[1] The PSR only references two positive drug tests in July 2022 (¶ 90), but Pretrial Services documented all eight positive drug screens in status memos to the Court and respective parties dated August 8, 2022; October 21, 2022; and December 19, 2022; and January 20, 2023.

positive for marijuana. On July 26, 2022, she tested positive for fentanyl. On September 20, 2022, she tested positive for fentanyl. On December 20, 2022, she tested positive for fentanyl. On December 31, 2022, she tested positive for fentanyl and cocaine. On January 5, 2023, she tested positive for fentanyl and cocaine. As a result of her repeated positive tests—and bond violations—she sought in-patient treatment in January 2023.

Romo's employment has not always been stable. Since March 2021 she has been an independent caregiver, which is positive, but during this time she has had access to opioids. (*Id*. ¶ 93). Before that she danced for cash, and as her criminal history shows, prostituted. (*Id*. ¶¶ 46, 51, 53, 95).

Romo has as many as seven misdemeanor convictions. (*Id*. ¶¶ 46-47, 50-51, 53-54). She has never served more than a few days in custody. She has consistently been sentenced to probation. In January 2014, when Romo was 18, she stole a wallet from a man in Las Vegas, and pled guilty to two counts of larceny. She scored one point for these offenses. (*Id*. ¶ 46). In April 2015, she stole clothing from a Sears. It wasn't until August 2017 that she pled guilty and was sentenced to two years of probation. She scored one point for this offense. (*Id*. ¶ 47). In January 2017, Romo was arrested in possession of several shaved down vehicle keys. She was sentenced to probation in June of that year. She scored one point for this offense. (*Id*. ¶ 50). She was sentenced the same day in June 2017 to probation for

loitering to commit prostitution, and again in June 2018 for the same offense. No points were assessed for either offense. (*Id*. ¶¶ 51, 53). In the interim Romo was caught multiple times driving without a proper license. (*Id*. ¶¶ 48-49, 52). Because Romo was on supervision for both shoplifting crimes when she committed this offense, she was also scored two additional points. (*Id*. ¶ 56). Romo's total criminal history score of six points resulted in a criminal history category of III. (*Id*. ¶ 57). The additional two points for being on probation at the time of this offense did not raise her criminal history category because of all her prior misdemeanor convictions.

Romo is a mother to two minor children, but fortunately she has support raising her children. Her son's father is actively involved in raising their child, and her daughter's paternal grandmother supports and helps care for her daughter. (*Id*. ¶¶ 73-74). Romo also has support from her own paternal grandmother. (*Id*. ¶ 75). In light of Romo's history of substance abuse in particular, it is encouraging to know there are other adults to help support her children. The fact that she is a mother should not be a reason to further vary from the government's recommendation or fail to impose a custodial sentence, which the seriousness of the offense calls for.

**3553(a)(4): the guideline range**

Under the First Step Act, Romo is safety valve eligible. The Act allowed for an unlimited number of 1-point prior offenses, something that the guidelines criteria does not allow for. Pursuant to the Section 402 of the First Step Act, the Court should vary downward and reduce the Probation Department's guideline range of 57-71 by two points under §5C1.2. This would reduce her total offense level to 21 and with a criminal history category III, results in a guideline range of 46-57 months. (*Id*. ¶ 128). The parties also agreed Romo was a relatively minimal participant in the offense. (*Id*. ¶¶ 29, 38). The range accounts for her role reduction.

**3553(a)(2)(A): the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;**

These two factors can be considered together. Drug trafficking is a serious crime, and it is not victimless. Drug trafficking and the subsequent use of drugs play a predominant role in the degradation of our communities, which Romo contributed to by transporting drugs. Fentanyl, the drug this organization predominately distributed is becoming more prevalent, but is particularly potent, dangerous, and highly addictive. It also poses a significant risk to law enforcement who seize the drug because a minute amount can be deadly and absorbed through the skin.

**3553(a)(2)(B): the need for the sentence imposed to afford adequate deterrence; 3553(a)(2)(C): the need for the sentence imposed to protect the public from further crimes of the defendant**

This will be Romo's first felony conviction. The government is hopeful that despite the poor choices she made in the past, a custodial sentence as recommended, will deter Romo from further criminal activity, she will make better choices for herself and her children, and there will not be a need to further protect the public from future crimes.

**3553(a)(6): the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct**

This provision of the guidelines is primarily aimed at national disparities, rather than those between co-defendants. *United States v. Rivera-Gonzalez*, 626 F.3d 639, 648, (1st Cir. 2010). However, Courts "may exercise…discretion and determine a defendant's sentence in light of a co-defendant's sentence." *United States v Presle*y, 547 F3d 625, 631 (6th Cir 2008). That being said, the Court has sentenced other defendants to date, those who played a more significant role in the conspiracy, each time varying downward, but by beginning with the advisory guideline range.

This Court sentenced Francis, who is most similarly situated, to 20 months imprisonment. (PageID.5634). The government recommended 30 months, which included a downward variance. Unlike Romo, Francis did not have any bond violations while on pretrial supervision. A sentence of 24 months for Romo does not

8

disproportionately vary from the guideline range or create an unwarranted sentencing disparity.

### Conclusion

The Court should impose a 24-months sentence.

Respectfully submitted,

Dawn N. Ison
United States Attorney

*s/ Andrea Hutting*
Andrea Hutting
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
andrea.hutting@usdoj.gov
(313) 226-9110

Dated: April 11, 2023

CERTIFICATE OF SERVICE

I hereby certify that on Tuesday, April 11, 2023 I electronically filed the

foregoing document under seal with the Clerk of the Court using the CM/ECF

system and emailed the filing to the following:

Robert F. Kinney

*s/Andrea Hutting*
Andrea Hutting
Assistant United States Attorney
